**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

**YOLANDA BOOKER, DARNELL EDWARDS,**
**CHAASAHN HUGHES, and RAYSHAWN SHAW,**
individually and on behalf of themselves and all current
and former employees,

Civ. Case No.   1:23-cv-10921

**COMPLAINT**

Plaintiffs,

vs.

**COLLECTIVE AND**
**CLASS ACTION**

**KFB & ASSOCIATES CONSULTING INC d.b.a**
**FLAGGERS AHEAD, ELECNOR HAWKEYE**
**LLC, CONSOLIDATED EDISON COMPANY OF**
**NEW YORK, INC., KLAUS F. BROSCHEIT**
**and VICKI BROSCHEIT**,

**JURY TRIAL DEMANDED**

Defendants.
----------------------------------------------------------------------

Plaintiffs Yolanda Booker, Darnell Edwards, Chaasahn Hughes, and Rayshawn Shaw

("Lead Plaintiffs"), on behalf of themselves and all other current and former Flaggers and

other employees similarly situated ("Plaintiffs"), by and through their attorneys, Working

Solutions Law Firm, PLLC, allege, upon personal knowledge as to themselves and upon

information and belief as to all other matters, against Defendants KFB & Associates

Consulting Inc. d.b.a Flaggers Ahead, Elecnor Hawkeye LLC, Con Edison of New York

Incorporated (the "Corporate Defendants"), Klaus F. Broscheit and Vicki Broscheit (the

"Individual Defendants") (collectively, "Defendants").

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action, on behalf of themselves and all other current

and former employees similarly situated, to remedy violations of the Fair Labor Standards

Act, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA").

2.      Plaintiffs were not paid for all of the hours they worked, and they were not paid a proper overtime rate under the NYLL or the FLSA when they worked more than 40 hours in a workweek. Although Plaintiffs were paid Twenty-Five ($25) dollars per hour for hours under forty, they were not paid from the very beginning of their workday until the very end of their workday, including, but not limited to, not being paid for arriving at the worksite before the start of their shift at the direction of their managers.  Plaintiffs were misclassified as 1099 independent contractors.  Further, Plaintiffs were not paid a lawful overtime rate for the hours Defendants recognized as compensable and eligible for an overtime premium. Plaintiffs seek on behalf of themselves, and all other current and former employees similarly situated, unpaid overtime, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief pursuant to 29 U.S.C. §§ 216(8) and 217, and all other applicable federal law from Defendants.

3.      Plaintiffs also bring this action, on behalf of themselves and all other current and former employees similarly situated, to remedy violations of the New York State Labor Law, including N.Y. Lab. L. §§ 190 *et seq*., §§ 650 *et seq.*, § 195(1), (3), (4), and (6) ("NYLL"), and 12 NYCRR § 142-2.2. Plaintiffs seek, for themselves and all other similarly situated employees, unpaid gap time wages, unpaid overtime, penalties for failure to issue accurate wage statements and wage notices, unlawful deductions by separate transaction for failing to reimburse Plaintiffs for necessary business expenses, statutory damages, interest, reasonable attorneys' fees and costs, liquidated and other damages, and all other appropriate legal and equitable relief, pursuant to the NYLL §§ 195, 198 and 663.

4.      Plaintiffs also bring this action, on behalf of themselves and all other current and

former employees similarly situated, to remedy violations of the New York State Department of Labor, New York City Office of the Comptroller, Bureau of Public Work Prevailing Wage Rates and Regulations, and NYLL §§220. Defendants did not pay Plaintiffs and all other current and former employees similarly situated as performing public works labor, as required under New York Labor Law §220 and Prevailing Wage Rate Schedules set by the Comptroller of the City of New York which state that any person that participates in a public works project in the employ of a contractor or subcontractor must be paid the appropriate prevailing wage. They also failed to pay Plaintiffs daily overtime, holiday premiums, and supplemental benefits as required by NYLL §220 and Prevailing Wage Rate Schedules set by the Comptroller of the City of New York.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 217 and 28 U.S.C. § 1331 and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), and under 29 U.S.C. § 201 *et. seq.*

6.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred.

## PARTIES

8.     Plaintiff Yolanda Booker was employed by Defendants as a Flagger from August 2021 to March 6, 2023. At all relevant times, she has resided in Brooklyn, NY.

9.     Plaintiff Darnell Edwards was employed by Defendants as a Flagger from April 2022 to August 2023. At all relevant times, he has resided in Brooklyn, NY.

10.     Plaintiff Chaasahn Hughes was employed by Defendants as a Flagger from March 2022 to October 2023.  At all relevant times, he has resided in New York, NY.

1.     Plaintiff Rayshawn Shaw was employed by Defendants as a Flagger from December 2021 to the present.  At all relevant times, he has resided in Richmond County, New York.

2.     Defendant KFB & Associates Consulting, Inc. d/b/a Flaggers Ahead ("KFB & Associates") is a utilities and construction services consulting company that provides certified flaggers for public construction, maintenance or utility work activities being performed by general contractors in New York and Connecticut.

3.     Defendant KFB & Associates headquarters is in West Tisbury, Massachusetts and their state of incorporation is Massachusetts.

4.     Defendant KFB & Associates conducts business and operates in New York State.

5.     Defendant Klaus F. Broscheit is the Board President and Owner of Defendant KFB & Associates.  He lives in West Tisbury, Massachusetts.

6.     Defendant Vicki Broscheit is the Corporate Secretary and a Board Member of Defendant KFB & Associates.  She lives in West Tisbury, Massachusetts.

7.     Defendant Elecnor Hawkeye LLC ("Elecnor") is an energy utilities and construction services provider in New York State.

8.     Defendant Elecnor is headquartered is in Hauppauge, NY and their state of incorporation is New York.

9.     Defendant Elecnor conducts business and operates in New York State.

10.     Defendant Con Edison of New York, Inc. ("ConEd") is a public utility, providing power to the vast majority of New Yorkers. As a major utility supplier, ConEd is responsible for the maintenance of a large swathe of infrastructure in New York City and

surrounding counties.  New York state law requires ConEd to provide for safety personnel, or flaggers, on some of its worksites, including all worksites related to the instant action. ConEd is incorporated under the laws of New York State and maintains a principal place of business in New York, New York.

11.    At all relevant times, the Corporate Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

12.    Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

13.    The Corporate Defendants are joint employers of Plaintiffs and the Collective Action Members and Class Members.

14.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants jointly employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

15.    At all relevant times, Plaintiffs and Class Members were jointly employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

16.    Defendant Broscheit and his wife Vicki Broscheit participated in the day-to-day operations of Defendants and exercised day to day operational control of Plaintiffs and are "employers" pursuant to the FLSA, and NYLL and the regulations thereunder, and are jointly and severally liable.

## COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiffs are trained as "safety flaggers" in work zone safety and are OSHA-10 certified.  Defendants required Plaintiffs to obtain and maintain a flaggers' certificate and site safety card in order to work on relevant ConEd projects.

18.     Plaintiffs bring their first cause of action as a collective action for themselves and all others similarly situated to recover unpaid overtime wages, liquidated damages, and other damages related to Defendants' violation of the FLSA.

19.     The Plaintiffs pursue the requested relief on behalf of the following collective:

> All persons hired by Defendant KFB & Associates and employed by Defendants in New York State as Flaggers on Con Edison worksites at any time from three years before the filing of this Complaint through the entry of judgment in this case (the "Collective Action Period") who worked over 40 hours in any workweek (the "Collective Members") and were not paid a lawful overtime wage under the FLSA, whether they worked directly with Con Edison or through a subcontractor.

20.     A collective action is appropriate because the Plaintiffs and the Collective Members are similarly situated, in that they were all subjected to Defendants' illegal policies, including their policy of failing to pay lawful overtime premiums at the proper rate for work performed in excess of 40 hours each week. As a result of this policy, the Plaintiffs and the Collective Members did not receive the legally required overtime premium payments for all hours worked in excess of 40 hours per week.

21.     The Plaintiffs and the Collective Members have substantially similar, if not identical, job duties and are or were paid based on a similar, if not identical, payment structure.

22.     Specifically, even though the Plaintiffs did not satisfy any test for exemption, Defendants engaged in a common scheme requiring, suffering, or permitting the Plaintiffs and the Collective Members to work overtime and failed to pay them appropriate overtime premiums.

23.    The Plaintiffs and the Collective Members were hired by KFB & Associates and assigned to work as Flaggers under the supervision of ConEd and, where applicable, third-party worksite supervisors subcontracted by ConEd.

24.    Defendants required the Plaintiffs and the Collective Members to follow their policies, practices, and directives for performing flagging responsibilities.  All Defendants retained the right to terminate Plaintiffs' employment at any time.

25.    Defendants controlled the work schedules that the Plaintiffs and the Collective Members worked.

26.    The Plaintiffs and Collective Members were all hourly employees.

27.    Defendant KFB & Associates, upon information and belief, with the consultation and awareness of the other Corporate Defendants, set the rates and method of pay applicable to the Plaintiffs and the Collective Members.

28.    Defendant KFB & Associates, upon information and belief, with the consultation and awareness of the other Corporate Defendants, misclassified Plaintiffs as independent contractors and denied them benefits normally afforded employees.

29.    Defendants required, suffered, or permitted the Plaintiffs and the Collective Members to work over forty hours per week without proper overtime pay.

30.    Defendants did not pay the Plaintiffs and the Collective Members an overtime premium of 1½ times their legally required hourly rate for all time worked in excess of 40 hours per week.

31.    Defendants maintained common timekeeping systems and policies with respect to the Plaintiffs and the Collective Members.

32.    The Plaintiffs estimate that the Collective, including both current and former employees over the relevant period, will include at least 40 members. The precise number of Collective

Members should be readily available from Defendants' records, including personnel, scheduling, and time records, and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Collective, its members may be informed of the pendency of this action directly by U.S. mail, electronic mail, or other electronic means.

## CLASS ACTION ALLEGATIONS

33.     Under the New York Labor Law and the New York common law, Plaintiffs bring their state causes of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons hired by Defendant KFB & Associates and employed by Defendants at any time six years before the filing of this Complaint through the entry of judgment in this case (the "Class Period") who worked in New York State as non-union Flaggers on ConEd worksites and who were not paid for all of their straight time (aka "gap time") wages earned, and/or lawful overtime wages earned for all hours worked over 40, and/or who did not receive lawful wage notices or wage statements as required under NYLL § 195, and/or who were required to purchase necessary equipment without reimbursement in violation of and/or who did not receive prevailing wages, daily overtime, holiday premiums, and supplemental benefits that they were entitled to receive for work that they performed under the ConEd contracts on New York City projects, whether they worked directly with Con Edison or through a subcontractor (the "Class Members").

34.     The number and identity of the Class Members can be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

35.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, there are at least 40 Class Members.

36.     Common questions of law and fact exist as to all Class Members, and such questions

predominate over any questions solely affecting individual Class Members.

37.     Common questions will determine Defendants' liability to all (or nearly all)

Class Members. These common questions include:

a.     whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL for Plaintiffs' gap time, overtime and other claims;

b.     whether Defendants failed to keep accurate time records for all hours worked by Plaintiffs and the Class Members;

c.     whether Defendants breached contracts with public utilities or local or state governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

d.     whether Defendants breached contracts with public utilities or local or state governmental entities by failing to pay Plaintiffs and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked in excess of 40 hours per workweek or eight hours per day on prevailing wage projects;

e.     whether Defendants breached contracts with public utilities or local or state governmental entities by failing to pay Plaintiffs and the Class Members supplemental benefits, holiday pay, and/or other paid leave on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

f.     whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs;

g.     whether Defendants failed to provide Plaintiffs and Class Members with proper wage notices and wage statements;

h.     whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.     the nature and extent of classwide injury and the measure of damages for those injuries.

38.     The Lead Plaintiffs' claims are typical of the Class Members' claims.

39.     The Lead Plaintiffs, like all Class Members, worked for Defendants in New York state as

Flaggers and their work was performed in accordance with Defendants' corporate policies.

Plaintiffs, like all Class Members, were, among other things, not paid prevailing wages, supplemental benefits, holiday pay, or daily/weekly overtime prevailing wages for work performed under contracts with  ConEd; and not provided with proper wage notice and wage statements. If Defendants are liable to Lead Plaintiffs for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

40.     The Lead Plaintiffs and their counsel will fairly and adequately represent the class.

41.     There are no conflicts between the Lead Plaintiffs and the Class Members, and the Lead Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

42.     Plaintiffs' counsel are experienced class action litigators who are well prepared to represent the interests of the Class Members.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

44.     The Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the Defendants. Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Although the relative damages suffered by individual members of the Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## STATEMENT OF FACTS

45.     At all relevant times, Defendant KFB & Associates contracted with ConEd and/or with Defendant Elecnor, a construction contracting business that has performed worksite supervision and management on ConEd excavation worksites, to provide flaggers for excavation work on streets, roads, and sidewalks throughout New York City and elsewhere in New York state.

46.     Defendant ConEd and Defendant Elecnor are joint employers with Defendant KFB & Associates.

47.     As construction flaggers on ConEd excavation sites, Plaintiffs were responsible for safety at and near construction sites, including directing pedestrian and vehicle traffic around the sites; setting up signs, cones, and barriers; ensuring that workers and pedestrians were safe and not near construction vehicles; closing street intersections.

48.     Plaintiffs' primary duties as flaggers focused upon ensuring the safety of the public and construction crew within close proximity to active construction work.

49.     Plaintiffs were hired by Defendant KFB & Associates and the Individual Defendants to work on Con Edison projects in New York City; on certain projects Con Edison contracted directly with Defendant KFB & Associates, and on others Con Edison contracted with Defendant Elecnor, which in turn subcontracted with Defendant KFB & Associates.

50.     Plaintiffs were required by Defendant KFB & Associates to purchase their own safety compliant hardhats, steel-toed boots, and matching waterproof high visibility pants, vests and jackets for all seasons as well as warm weather gear needed to tolerate cold weather conditions in the winter.  Defendant KFB & Associates required the Plaintiffs to purchase these items personally and did not reimburse them.

51.     Defendant Elecnor and/or Defendant ConEd supervised the excavations and Plaintiffs from the worksite via directly employed foreman, inspectors, and supervisors.

52.     The Individual Defendants, husband and wife owners and officers of KFB and Associates, jointly shared managerial control over Plaintiffs' pay, assignments and day-to-day off-worksite operations.  The Individual Defendants and KFB & Associates were responsible for approving Plaintiffs' timekeeping and payroll, setting office policies, hiring, discipline, firing, and managing their business.

53.     Plaintiffs were typically scheduled to work five or six shifts per week.  Each shift was typically between 8 and one-half hours (day time) and 12 hours (overnight or around the clock) inclusive of a 30-minute unpaid meal break.

54.     Defendants subjected Plaintiffs to unlawful practices that deprived them of wages and of required overtime pay.

55.     The Individual Defendants, with the awareness of the remaining Corporate Defendants, required Plaintiffs to arrive 30 minutes before every shift to ensure appropriate staffing levels were met and to make last minute substitutions if someone did not show up. Plaintiffs were not paid for this time.

56.     For instance, during the Class Period, Plaintiff Booker received this text with instructions from Defendant Vicki Broscheit for a daytime assignment at a ConEd excavation site:

> "Tuesday you will be working again at West and Avenue and W. 75th St. in Manhattan. Your foreman is Guy…work starts at 8 AM. Please get there by 7:30 and text me and text to Foreman and check in with Yolanda and Chase…"

57.     On another occasion, Plaintiff Booker received a text from Individual Defendant Vicki Borscheit before a shift started that she was scheduled to work stating:

"Good morning I just wanted to remind all of you that you are a team of around the clock flagging if one flagger arrives a little bit late the other one must wait before they leave until that flagger arrives for both shifts. you must check in with the other flaggers to make sure they are on site and I ask that everyone gets there a half hour early at 6:30 whether it's a.m. or p.m. to allow for any traffic or any delays. Thank You."

58.     Plaintiff Booker arrived 30 minutes early for these and all ConEd jobs and was not paid for the time.  Plaintiff Booker was required by Defendant Klaus Borcheit to text Vicki when they arrived at the worksite and Vicki asked Plaintiff to also text the worksite foreman, who was an Elecnor employee.  Upon information and belief, these practices were the same for all Plaintiffs.

59.     Plaintiffs were also only paid time and one-quarter for hours in excess of 40 in a workweek in violation of the requirements of the FLSA, NYLL and the ConEd Contract.

60.     Once they were assigned a job by KFB & Associates, Plaintiffs were given a timesheet to be signed by the Con Ed or Elecnor supervisor and returned to KFB & Associates at the end of their shift.  Instead of bringing a physical copy of the timesheet to the Individual Defendants, the Individual Defendants asked them to take a photo of it and text it to them.  Plaintiffs understood that KFB & Associates used the completed timesheets to invoice Con Ed and Elecnor for flagging services and pay Plaintiffs for their hours worked.

61.     Plaintiffs were all misclassified as independent contractors, and pursuant to this practice, none of the Plaintiffs received benefits of any kind.

62.     Plaintiffs did not receive a lawful pay notice as required by Section 195 of the NYLL.

63.     Plaintiffs were paid by quickpay applications such as the cash app.  They did not receive any pay statement, let alone a lawful pay statement as required by Section 195 of the NYLL.

64. Con Ed or Elecnor supervisors or foremen instructed Plaintiffs on where to stand in relation to the excavation site, where to put up signage, disciplined and coached them, set their weekly working schedule and working hours in coordination KFB & Associates, and signed their timesheets.

65. The Lead Plaintiffs estimate, for full workweeks, they worked between forty and sixty hours per week on work sites, including the unpaid 30-minute pre-shift waiting time.

66. Plaintiff Darnell Edwards, for the workweek of April 23, 2023, worked 63 hours inclusive of a daily unpaid 30-minute lunch without being paid lawful overtime premiums, and without consideration of the 30-minute early arrival time.

67. Plaintiff Yolanda Booker, for the workweek of August 15, 2022, worked 51 hours inclusive of a daily unpaid 30-minute lunch without being paid lawful overtime premiums, and without consideration of the 30-minute early arrival time.

68. Con Edison performs extensive construction work on the utility grids under and adjacent to New York City roadways that requires the excavation of these roadways. Accordingly, Con Edison must comply with Sec. 19-142, which provides that any person seeking a permit to use or open a street (a "Street Opening Permit") shall be required to agree that workers employed on worksites subject to such permit shall be paid prevailing wages, including specifically utility companies and their contractors.  Sec. 19-142.

69. Specifically, the permits provided:

WAGE01 NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON, (CONT. ON STIP WAGE02)

WAGE02    AND THAT THE PREVAILING SCALE OF UNION WAGES
SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES
AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC.
TWO HUNDRED TWENTY OF THE LABOR LAW,
PAID TO THOSE SO EMPLOYED.

70.    The Street Opening Permits contain additional information as to the identity and contact information of parties, re-state the wage requirement, and provide further terms and conditions with which Con Edison must comply.  The permits also identify the date and time that Con Edison accepted the permit and notify Con Edison that failure to comply with all laws, rules and specifications of the NYC DOT and terms of the permit may result in revocation.

71.    The Street Opening Permits incorporate the wage requirement of Sec. 19-142. Therefore, Sec. 19-142 provides for two separate agreements to pay prevailing wages to workers on excavations: (1) the "agreement [that] shall have been entered into" (i.e. the ConEd Contracts) before the Street Opening Permit is acquired and (2) the Street Opening Permit itself because "all such permits issued shall include therein a copy of [Sec. 19-142]".

72.    The law provides that when permits are issued to utility companies or their contractors, the power to enforce the prevailing wage provision vests with the Comptroller consistent with NYLL § 220.

73.    Upon information and belief, ConEd obtained Street Opening Permits on each of the street excavation worksites where Plaintiffs worked, thus agreeing to pay prevailing wage for all of the projects involving roadway excavations giving rise to the class claims.

74.    The prevailing wage requirement of Sec. 19-142 is independent from the prevailing wage mandate applicable to "public works" set forth in NYLL § 220, but incorporates the same obligations as those set forth in NYLL § 220.

75.     Almost all of the work performed on the ConEd contracts during the Class Period involving flaggers hired by KFB & Associates required opening the street.

76.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the Class Members should have been annexed to and formed a part of the ConEd Contracts. If not annexed to the ConEd Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

77.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the ConEd Contracts was made for the benefit of all workers.

78.     Upon information and belief, the ConEd Contracts with KFB & Associates and/or Elecnor as construction contractors and relating to the instant claims incorporate ConEd'sStandard Terms and Conditions for Construction Contracts.  ConEd's Standard Terms and Conditions for Construction Contracts acknowledge the obligation to pay prevailing wages to all workers upon excavations, including those hired under subcontract agreements, in accordance with Sec. 19-142; the 2012 and 2016 Standard Terms and Conditions for Construction Contracts further recognize that workers covered by Sec. 19-142 are third-party beneficiaries of those contracts.

79.     Upon information and belief, the ConEd Contracts with KFB & Associates as subcontractors and relating to the instant claims incorporate Con Edison Standard Terms and Conditions for Service Contracts.  The Con Edison Standard Terms and Conditions for Service Contracts mandates compliance with all federal, state and local laws and other regulations in effect at the time of the work performed. KFB & Associates therefore agreed to comply with all laws, including Sec. 19-142, that require prevailing wages for its workers on Con Edison's excavation projects.

80.     KFB & Associates and Elecnor therefore agreed to pay Plaintiffs prevailing wages in accordance with Sec. 19-142 and the explicit terms of its contracts with ConEd. To the extent that KFB & Associates and/or Elecnor obtained Street Opening Permits for any of the work performed for ConEd, they also agreed with the NYC DOT to pay prevailing wages to workers on such projects, pursuant to Sec. 19-142.

81.     Upon information and belief, ConEd was aware of the rates paid to Plaintiffs because they controlled the number of hours that Plaintiffs could track and negotiated the total hourly rates paid for their work.

82.     ConEd not only shared authority and control over Plaintiffs' work with KFB &
Associates and Elecnor but in fact wielded final authority and control over many aspects of
Plaintiffs' employment, including daily supervision, timekeeping, and rates paid.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of the Lead Plaintiffs and the Collective Class Members)

83.     Plaintiffs, on behalf of themselves and the Collective Class Members, repeat and
reallege each and every allegation of the preceding paragraphs hereof with the same force and
effect as though fully set forth herein.

84.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Class
Members by failing to pay overtime premiums of one and one-half (1.5) times the employees'
regular hourly rates for all hours worked in excess of forty (40) hours per week.

85.     By failing to pay overtime at a rate not less than one and one-half times the regular
rate of pay for work performed in excess of 40 hours per week, Defendants have violated and
continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and
215(a)(2).

86.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within
the meaning of 29 U.S.C. § 255(a).

87.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Class
Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Class Members
are entitled to recover from Defendants their unpaid overtime premium compensation, damages for
unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs
and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of the Lead Plaintiffs and the Class Members)

88.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.     Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

90.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

91.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**THIRD CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PAY GAP TIME</u>**
**<u>WAGES</u>**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

92.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar

days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff all of their wages earned within the week such wages were due.

94.     Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

95.     Defendants' failure to pay Plaintiffs wages of any kind for arriving 30 minutes before their shift and waiting for their shift to start, violated NYLL §§ 191 and 193.

96.     By withholding gap time wages and overtime compensation from Plaintiffs, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiff.

97.     Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et seq.

98.     Due to Defendants' violations of NYLL § 191 (1)(a), Plaintiffs and the Class Members are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs and pre-judgment and post-judgment interest pursuant to NYLL § 198.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT**
**VIOLATIONS**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

99.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.    Defendants have willfully failed to supply Plaintiffs and the Class Members a wage statement that includes the information required by Article 6, § 195(3).

101.    Defendants failure to provide any wage notice or wage statements at all prevented Plaintiff from: (i) realizing their true hours worked; (ii) realizing they were underpaid and subject to illegal deductions from wages by separate transaction; (iii) taking timely and appropriate action to obtain the payments.

102.    Plaintiffs were hindered in their ability to timely contest and accurately calculate the wage and hour deficiencies to which they were subjected by their employer.

103.    Plaintiffs were deprived of income for longer than would have been the case had they been able to timely raise the underpayments earlier.

104.    Plaintiffs were also deprived of their ability to correct incorrect information sent to third parties.  Notably, Plaintiffs were unable to determine if Defendants had paid into the unemployment or workers' compensation funds because deductions for these benefits were not reflected at all in their statements.  As a result, Plaintiff were unable to determine their eligibility for unemployment or worker's compensation benefits, or determine if their employer had registered as a covered employer.

105.    Plaintiffs were also unable to determine who their legal employer was.  As a result, they were unable to direct any wage or benefits dispute to the correct corporate parties.

106.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, for a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

107.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    Defendant has willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, at the time of hire or before a change of pay rate, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; and the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

109.    Defendants failure to provide any wage notice or wage statements at all prevented Plaintiff from: (i) realizing their true hours worked; (ii) realizing they were underpaid and subject to illegal deductions from wages by separate transaction; (iii) taking timely and appropriate action to obtain the payments.

110.     Plaintiffs were hindered in their ability to timely contest and accurately calculate the wage and hour deficiencies to which they were subjected by their employer.

111.    Plaintiffs were deprived of income for longer than would have been the case had they been able to timely raise the underpayments earlier.

112.    Plaintiffs were also deprived of their ability to correct incorrect information sent to third parties.  Notably, Plaintiffs were unable to determine if Defendants had paid into the

unemployment or workers' compensation funds because deductions for these benefits were not reflected at all in their statements. As a result, Plaintiff were unable to determine their eligibility for unemployment or worker's compensation benefits, or determine if their employer had registered as a covered employer.

113.    Plaintiffs were also unable to determine who their legal employer was. As a result, they were unable to direct any wage or benefits dispute to the correct corporate parties.

114.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL DEDUCTIONS FROM**
**WAGES BY SEPARATE TRANSACTION**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

115.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

116.    Pursuant to NYLL § 193 and 12 NYCRR Part 195 Section 2.1, no employer shall make any deduction from the wages of an employee, such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

117.    Section 193 and 12 NYCRR Part 195 allow for certain deductions from wages that are authorized by, and for the benefit of, the employee. The deductions are limited to the ones specifically listed in the statute and "similar payments for the benefit of the employee."

118.    According to Section 193 and 12 NYCRR Part 195, no employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages.

119.    Plaintiffs were required by Defendant KFB & Associates to purchase their own safety compliant hardhats, steel-toed boots, and matching waterproof high visibility pants, vests and jackets for all seasons as well as warm weather gear needed to tolerate cold weather conditions in the winter.

120.    Defendant KFB & Associates required the Plaintiffs to purchase these items personally and did not reimburse them.

121.    These items were not for the benefit of the employee, they were purchased for the benefit of the employer, and failing to reimburse the Plaintiffs amounted to an unlawful deduction by separate transaction.

**SEVENTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

122.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

123.    Upon information and belief, the ConEd Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff and the employees performing work pursuant to such contracts.

124.    Those prevailing rates of wages and supplemental benefits were made part of the ConEd Contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

125.    Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects or projects performed under Street Opening Permits

constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

126.     As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

**EIGHT CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In the Alternative)**
**(Brought on Behalf of Lead Plaintiffs and the Class Members)**

127.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

128.     Based on Defendants' failure to pay Plaintiffs and the Class Members the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs and the Class Members.

129.     Equity and good conscience require that Defendants pay restitution to Plaintiffs and the Class Members.

130.     Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

131.     Plaintiffs and the Class Members provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs and the Class Members expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiffs and the Class Members the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

132.     As a result of Defendants' failure to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

133.    As a result of Defendants' failure to pay Plaintiffs and the Class Members the reasonable value of the valuable services they rendered, Plaintiffs and the Class Members are entitled to relief from Defendants under New York's common law of quantum meruit.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Class Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of compensatory damages as a result of Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

h.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.     An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

j.     An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

k.     An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1-b);

l.     An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

m.   An award of prejudgment and post-judgment interest;

n.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.   Such other and further relief as this Court deems just and proper.

Dated:    December 15, 2023
       New York, New York

_____
Christopher Q Davis
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004
(main) 646-430-7940
(fax) 646-349-2504
cdavis@workingsolutionsnyc.com